In the matter of the HERBERT M. DOWSETT TRUST, under an Agreement of Trust executed on September 2, 1954 by and between HERBERT M. DOWSETT, Settlor, and SHERMAN NOTT DOWSETT and ERNEST KAPUAMAILANI KAI, Trustees

NO. 13741

(SPECIAL PROCEEDINGS NO. 88-0184)

May 4, 1990

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

In 1985, Joan D. Osborne (Joan), an income beneficiary of the Herbert M. Dowsett Trust (the Trust), sued the trustees of the Trust, seeking an accounting, damages, and the removal of the trustees. In 1987, a stipulated settlement approved by the circuit

court resulted in the resignation of the trustees and the dismissal of Joan's action, with prejudice. In 1988, Ellen M. Osborne, Peter D. Osborne, and Ian M. Osborne (collectively Petitioners or Appellants), three of the remainder beneficiaries of the Trust, filed the present action to surcharge the former trustees. The issue presented on appeal is whether the doctrine of res judicata precludes Petitioners' 1988 action, as the court held below. We hold that the lack of privity between Joan and Petitioners renders res judicata inapplicable in this case.

We must also decide whether under Hawaii Revised Statutes (HRS) § 560:7-206 (1985)[1] Petitioners are bound by the dismissal with prejudice of Joan's action, as the former trustees alternatively argue. We conclude that Petitioners are statutorily bound by the 1987 dismissal of Joan's action.

## I. FACTS

### A. *The Trust*

On September 2, 1954, Herbert M. Dowsett, as settlor, established an inter vivos trust by a trust indenture. The indenture named his son Sherman N. Dowsett (Sherman) and Ernest K. Kai (Kai), as trustees. It directed the trustees, after the death of the settlor, to pay the net income of the Trust, in equal shares, to the settlor's children, Joan, Sherman, and Laurie S. Dowsett (Laurie) or to the lawful issue of any deceased child. The Trust was to terminate twenty years after the death of the last survivor of the settlor's three children. Upon termination, the Trust corpus would go to the lawful issue of the three children, per stirpes.

The settlor died on February 17, 1969.

Petitioners are Joan's children. Both Sherman and Laurie have surviving children.

### B. *The Prior Suit – S.P. 85-0030*

On February 11, 1985, Joan filed a "Petition for Accounting, Damages and Removal of Trustees" in Special Proceedings No.

---

[1] *See* Part III of opinion, *infra.*

85-0030 (S.P. 85-0030) against Sherman and Kai. The petition listed the names and addresses of persons interested in the proceedings, including fifteen remainderpersons of the Trust, inclusive of Petitioners. The record includes a "Proof of Service by Mail," dated March 12, 1985, indicating that Joan's attorney mailed copies of the petition and a notice of hearing to the listed persons by certified mail on February 15, 1985. Her attorney also received return receipts signed by the addressees.

The first amended petition in S.P. 85-0030 alleges various acts committed by Sherman and Kai constituting breaches of their fiduciary duties as trustees. Joan sought an accounting, restitution, special, general, and punitive damages, removal of the trustees, and the appointment of a Master to review the accounts and administration of the trustees.

Sometime in 1985, Kai resigned as a trustee. Sherman appointed Henry Klein (Klein) to succeed Kai on February 20, 1986. Hereinafter, Sherman, Kai, and Klein will be referred to collectively as "Trustees" or "former Trustees."

On February 18, 1987, the filing of a "Stipulation Settling Issues and Order (a) Approving Stipulation, (b) Accepting and Acknowledging Resignation of Trustees, (c) Appointing Successor Trustees, and (d) Dismissing Amended Petition and Counterclaim With Prejudice" (Stipulated Settlement) concluded S.P. 85-0030. The Stipulated Settlement was signed by Laurie, as "Party in Interest," Joan, and the Trustees. In the Stipulated Settlement, Joan released and discharged the Trustees "from all claims, whether they be ex delicto, ex contractu, in equity or otherwise, present and future, known or unknown, arising out of or in any way connected with the administration" of the Trust. Record at 138.

### C. The Present Suit – S.P. 88-0184

On May 18, 1988, Petitioners filed a "Petition for Surcharge of Former Trustees" against Sherman, Kai, and Klein in Special Proceedings No. 88-0184 (S.P. 88-0184). The petition charged the former Trustees with mismanagement and self-dealing during their tenure as trustees. The alleged acts constituting breaches of fiduciary duties were substantially the same as those that Joan had complained of in S.P. 85-0030. The Trustees filed a response to the

petition and counterclaimed, charging Petitioners with "deliberate falsification" and "outrageous intentional conduct designed solely to cause emotional distress and monetary loss to the [Trustees]." Record at 46.

On August 22, 1988, the Trustees filed a motion to dismiss the petition or, in the alternative, for summary judgment. On October 5, 1988, the lower court granted summary judgment to the Trustees "on the ground that the principles of res judicata bar Petitioners' claims against [the Trustees]." *Id.* at 244.

After a Hawaii Rules of Civil Procedure (HRCP) Rule 54(b) certification of the summary judgment, Petitioners filed a timely appeal.

## II. RES JUDICATA

Based on Hawaii case law, res judicata comprises two separate doctrines or rules concerning the preclusive effect of prior adjudication. Those doctrines or rules are denominated "res judicata" and "collateral estoppel."[2]

Under the doctrine of res judicata, "[t]he judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided." *In re Bishop Estate,* 36 Haw. 403, 416 (1943). The doctrine of collateral estoppel, on the other hand, "precludes the relitigation of a fact or issue which was previously determined in a prior suit in a different claim between the same parties or their privies[, or] . . . [the] relitigation of facts or issues previously determined when it is raised defensively by one not a party in a prior suit against one who was a party in that suit

---

[2]Some modern commentators treat "res judicata" as a broad term referring to "the distinctive effects of a judgment separately characterized as 'claim preclusion' and 'issue preclusion.'" 18 C. Wright, A. Miller, and E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4002 at 6 (1981). *See also* Restatement (Second) of Judgments § 27 (1982).

and who himself raised and litigated the fact or issue."[3] *Ellis v. Crockett,* 51 Haw. 45, 55-56, 451 P.2d 814, 822 (1969) (citations omitted). *See also Marsland v. International Soc'y for Krishna Consciousness,* 66 Haw. 119, 124, 657 P.2d 1035, 1038-39 (1983); *Santos v. State,* 64 Haw. 648, 652-53, 646 P.2d 962, 965-66 (1982); *Silver v. Queen's Hosp.,* 63 Haw. 430, 435-36, 629 P.2d 1116, 1121-22 (1981); *Morneau v. Stark Enters., Ltd.,* 56 Haw. 420, 422-23, 539 P.2d 472, 474-75 (1975).

We note that collateral estoppel also requires that, in the prior action, the issues sought to be precluded "have been both actually litigated and actually decided." 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4419 at 177 (1981) (footnote omitted). *See also* Restatement (Second) of Judgments § 27 (1982). Accordingly, consent judgments do not ordinarily support collateral estoppel. 18 Wright, Miller & Cooper, *supra* § 4443 at 385. Since the Stipulated Settlement was the basis of the dismissal of S.P. 85-0030 with prejudice, collateral estoppel is not applicable in this case. *See Sullivan v. Easco Corp.,* 662 F. Supp. 1396, 1408 (D. Md. 1987) (a "stipulation of dismissal with prejudice constitutes a final judgment on the merits for the purpose of *res judicata* (claim preclusion) though not for the purpose of collateral estoppel (issue preclusion).") (Footnote omitted).

The Trustees contend, however, that the dismissal with prejudice of Joan's claims in S.P. 85-0030 precluded Appellants from asserting the claims in S.P. 88-0184 under the doctrine of res judicata. In determining whether res judicata is applicable in this case, we note that the subject matter involved in S.P. 85-0030 is identical to those in S.P. 88-0184. Also, the dismissal with prejudice of S.P. 85-0030 is a final judgment on the merits in a res judicata (claim preclusion) analysis. *See Caires v. Kualoa Ranch, Inc.,* 6 Haw. App. 52, 708 P.2d 848 (1985); *Lundburg v. Stinson,* 5 Haw. App. 394, 695 P.2d 328 (1985). Finally, we reach the dispositive question under our res judicata analysis: whether Appellants were in privity

---

[3] Collateral estoppel may also be used offensively. "In the offensive use of collateral estoppel, a stranger relies upon a prior judgment as conclusively establishing in his favor an issue he must prove as an essential element of his claim, using the judgment as a 'sword.' " *Rosa v. CWJ Contractors, Ltd.,* 4 Haw. App. 210, 221, 664 P.2d 745, 752 (1983).

with Joan, the party in S.P. 85-0030. Because "[t]here is no clearly accepted definition of privity[,]" the answer is not easy. *Moore v. Hafeeza,* 212 N.J. Super. 399, 404, 515 A.2d 271, 274 (1986).

The concept of privity has moved from the conventional and narrowly defined meaning of " 'mutual or successive relationship[s] to the same rights of property' " to " 'merely a word used to say that the relationship between the one who is a party of record and another is close enough to include that other within the res ajudicata.' " Comment, *Nonparties and Preclusion by Judgment: The Privity Rule Reconsidered,* 56 Cal. L. Rev. 1098, 1102 (1968) (footnotes omitted) (citations omitted). This comports with modern case law, which recognizes that the determination of who are privies "requires careful examination into the circumstances in each case as it arises." 46 Am. Jur. 2d *Judgments* § 532 at 683 (1969).

Adequate representation of the interests of the nonparty, *Hansberry v. Lee,* 311 U.S. 32, 44-45, 61 S. Ct. 115, 119-20, 85 L.E. 22, 29 (1940), and "proper protection to the rights of the person sought to be bound," *McFadden v. McFadden,* 239 Or. 76, 80, 396 P.2d 202, 204 (1964), are major considerations in privity analysis. *See also Pennington v. Snow,* 471 P.2d 370, 375 (Alaska 1970) ("existence of privity must depend upon a finding that the first action provided substantial protection of the rights and interests of the non-party.") Moreover, since res judicata is an affirmative defense under HRCP Rule 8(c),[4] the party asserting the defense has the burden of proving adequate representation of the interests and proper protection of the rights of the nonparty in the prior action.

Based on the record before us, we are not convinced that Joan adequately represented the interests and properly protected the rights of Appellants in S.P. 85-0030. We therefore hold that Appellants were not in privity with Joan. Accordingly, res judicata was not applicable in S.P. 88-0184.

The Trustees argue that privity exists because of (1) the blood relationship between Appellants and Joan; (2) Appellants' and Joan's interest in the Trust; and (3) Appellants' interest in the

---

[4] In the pretrial order filed on July 5, 1988, the circuit court ordered that "the Hawaii Rules of Civil Procedure shall apply to this special proceeding[.]" Record at 63.

outcome of S.P. 85-0030 and their capability of being benefitted by that prior action.

A close family relationship, without more, "is not enough to bind a nonparty to a judgment." 18 Wright, Miller & Cooper, *supra* § 4459 at 522. Although both Joan and Appellants had interests in the Trust, those interests were divergent. As an income beneficiary, Joan's bias would favor the Trust income rather than its corpus which Appellants, as remainderpersons, would favor. Undoubtedly, Appellants were interested in the outcome of S.P. 85-0030 and could have benefitted from that action. However, the record discloses that Joan was also pursuing claims relating to other trusts in which she was a beneficiary and the Trustees were the same. Appellants had no interest in those other trusts. The claims involving the other trusts were also settled, but the record does not include the terms of those settlements. Although Joan sought an accounting, damages, and the removal of the Trustees in S.P. 85-0030, the settlement provided only for the removal of the Trustees and $103,000 from Sherman "as partial payment" of her attorneys' fees and other costs and expenses incurred in the case. Record at 137. Joan, in turn, released and discharged the Trustees from all claims "arising out of or in any way connected with the administration" of the Trust. *Id.* at 138.

Here, there was no full and fair trial where Joan's claims in S.P. 85-0030 were resolved. While this is not a requirement for the application of res judicata, a trial on the merits can strengthen a finding of fairness in binding a non-party because it increases the probability that the issues have been fully addressed and resolved. Here, even this possible protection of the non-party's interest is lacking. Accordingly, we cannot conclude that Joan adequately represented and properly protected Appellants' interests and rights in S.P. 85-0030.

The Trustees also argue that all remainderpersons of the Trust, including Appellants, received adequate notice of S.P. 85-0030, and Appellants could and should have intervened in the case. However, under the doctrine of res judicata, "a nonparty is not precluded from relitigating matters decided in a prior action simply because it passed by an opportunity to intervene." 18 Wright, Miller & Cooper, *supra* § 4452 at 446. *Cf. Searle Bros. v. Searle*, 588 P.2d 689 (Utah 1978) (right to intervene does not bind a party in a

subsequent suit simply because he did not intervene when he had the chance).

Finally, the Trustees argue that Appellants are bound by the doctrine of virtual representation. They state that Joan virtually represented Appellants in S.P. 85-0030. We do not agree.

Traditionally, virtual representation is applied in the area of probate proceedings to bind persons who are unknown, unascertained, or unborn through "representation by someone with clearly aligned interests." 18 Wright, Miller & Cooper, *supra* § 4457 at 495 (footnote omitted). Some cases have applied virtual representation to "preclude relitigation of any issue that had once been adequately tried by a person sharing a substantial identity of interests with a nonparty." *Id.* at 494. Generally, these cases involve "substantial elements of participation in the first litigation, apparent consent to be bound, apparent tactical maneuvering, or close relationships between the parties and nonparties." *Id.* at 498-99 (footnotes omitted). The treatise concludes that there may be a narrow role for this broader interpretation of virtual representation "so long as adequate litigation remains the central requirement." *Id.* at 502.

Here, there is no showing that Appellants participated in, or consented to be bound by, S.P. 85-0030. There is no evidence of any tactical maneuvering in S.P. 85-0030. There was a close family relationship between Joan and Appellants, but there was no adequate litigation in S.P. 85-0030. Thus, Joan did not virtually represent Appellants in a res judicata context.

For the foregoing reasons, we hold that the lower court erred in granting the Trustees summary judgment on the ground of res judicata.

### III. PRECLUSION UNDER HRS § 560:7-206

The Trustees alternatively contend, however, that summary judgment was proper because HRS § 560:7-206[5] precluded Appel-

---

[5] Hawaii Revised Statutes (HRS) Chapter 560 is Hawaii's Uniform Probate Code enacted in 1976. Act 200, 1976 Haw. Sess. Laws 372. HRS § 560:7-206 is identical to section 7-206 of the Uniform Probate Code approved in 1969 by the National Conference of Commissioners on Uniform State Laws and the House of Delegates of the American Bar Association. 8 U.L.A. 552 (1983).

lants from filing S.P. 88-0184. HRS § 560:7-206 provides as follows:

> **Trust proceedings; initiation by notice; necessary parties.** Proceedings under section 560:7-201 are initiated by filing a petition in the court and giving notice pursuant to section 560:1-401 to interested persons. The court may order notification of additional persons. A decree is valid as to all who are given notice of the proceeding though fewer than all interested persons are notified.

We agree with the Trustees that Appellants were statutorily barred from filing the present suit.

The prior suit, S.P. 85-0030, filed by Joan was a proceeding under HRS § 560:7-201.[6] That suit involved the administration of the Trust wherein an income beneficiary sought an accounting, surcharge, and removal of the Trustees. Notice was given to Appellants pursuant to HRS § 560:1-401[7] by certified mail with return receipts obtained from Appellants. Being "beneficiaries . . . having a property right in or claim against a trust estate," Appellants were "interested persons" as that term is defined in HRS § 560:1-201(24). The court order approving the stipulation in S.P. 85-0030 and dismissing that suit, with prejudice, was "valid" and binding upon Appellants. Therefore, Appellants were precluded from

---

[6] HRS § 560:7-201 (1985) provides in part as follows:

**Court; jurisdiction of trusts.** (a) The court has jurisdiction of proceedings initiated by trustees and interested persons concerning the internal affairs of trusts. Proceedings which may be maintained under this section are those concerning the administration and distribution of trusts, the declaration of rights and the determination of other matters involving trustees and beneficiaries of trusts. These include, but are not limited to, proceedings to:

(1) Appoint or remove a trustee;
(2) Review trustees' fees and to review and settle interim or final accounts;
(3) Ascertain beneficiaries, to determine any question arising in the administration or distribution of any trust including questions of construction of trust instruments, to instruct trustees, and to determine the existence or nonexistence of any immunity, power, privilege, duty or right; and
(4) Release registration of a trust.

[7] HRS § 560:1-401(a) (1985) provides in part that notice shall be given "[b]y any method by which the person entitled to notice receipts for a copy thereof at least fourteen days before the time set for the hearing[.]"

commencing the present suit, S.P. 88-0184, to relitigate matters deemed valid and binding on them in the prior suit, S.P. 85-0030.

Appellants pose a technical argument, however, claiming that HRS § 560:7-206 is not applicable because an "order" rather than a "decree" was issued in S.P. 85-0030. This argument is unpersuasive.

The term "decree" is not defined in HRS Chapter 560. It is defined in Black's Law Dictionary 369 (5th ed. 1979) as a "judgment of a court of equity or chancery, answering for most purposes to the judgment of a court of law." It is likely that the codifers selected the term "decree" in section 7-206 of the Uniform Probate Code because courts of equity have historically exercised exclusive jurisdiction over trusts. 76 Am. Jur. 2d *Trusts* § 3 (1975). In Hawaii, as in most other American jurisdictions, the same court enforces legal and equitable obligations. *See* HRS §§ 603-21.5, -21.6, -21.7. The same procedural rules also apply "in all suits of a civil nature, whether cognizable as cases at law or in equity[.]" HRCP Rule 1. The Uniform Probate Code uses the term "decree" and "order" interchangeably. For example, in HRS § 560:1-403(2)(ii), the words "orders binding a trustee," rather than "decrees binding a trustee" are used. Under such circumstances, we hold that the term "decree" in HRS § 560-7-206 includes the term "order."

Next, Appellants argue that because a "judicially supervised settlement" was involved in S.P. 85-0030, HRS § 560:1-403,[8] which is more specific than HRS § 560:7-206, is applicable. Appellants

---

[8] HRS § 560:1-403 (1985) provides in part as follows:

**Pleadings; when parties bound by others; notice.** In formal proceedings involving trusts, . . . and in judicially supervised settlements, the following apply:

(1) Interests to be affected shall be described in pleadings which give reasonable information to owners by name or class, by reference to the instrument creating the interests, or in other appropriate manner.

(2) Persons are bound by orders binding others in the following cases:

\*　\*　\*

(ii) To the extent there is no conflict of interest between them or among persons represented, orders binding a guardian of the property bind the person whose estate the guardian controls; orders binding a guardian of the person bind the ward if no guardian of the property of the ward's estate has been appointed; orders binding a trustee bind beneficiaries of the trust in proceedings to probate a will estab-

assert that since none of the special relationships specified in HRS § 560:1-403(2) exist in this case, neither that section nor HRS § 560:7-206 applies to them. Appellants' argument has no merit.

HRS §§ 560:7-206 and 560:1-403 are not mutually exclusive, as Appellants argue. HRS § 560:1-403 adds to the list of those who are bound by a court's decree or order. The section provides that orders binding a trustee shall bind trust beneficiaries if there is no conflict of interest between them. The orders will be binding on the beneficiaries even if they are not given notice, if the trustee who can bind them has been given notice. However, its application is narrowly limited to proceedings "to probate a will establishing or adding to a trust, to review the acts or accounts of a prior fiduciary and in proceedings involving creditors or other third parties[.]" HRS § 560:1-403(2)(ii).

Here, S.P. 85-0030 was not a type of proceeding specified in HRS § 560:1-403(2)(ii). Moreover, there was a conflict between the Trustees and the Trust beneficiaries. Consequently, HRS § 560:1-403 was inapplicable and Appellants, who received notice as interested persons, were bound by the order in S.P. No. 85-0030 pursuant to HRS § 560:7-206.

---

lishing or adding to a trust, to review the acts or accounts of a prior fiduciary and in proceedings involving creditors or other third parties; and orders binding a personal representative bind persons interested in the undistributed assets of a decedent's estate in actions or proceedings by or against the estate. If there is no conflict of interest and no guardian of the property or guardian of the person has been appointed, a parent may represent the parent's minor child.

(iii) An unborn or unascertained person who is not otherwise represented is bound by an order to the extent the unborn or unascertained person's interest is adequately represented by another party having a substantially identical interest in the proceeding.

(3) Notice is required as follows:

(i) Notice as prescribed by section 560:1-401 shall be given to every interested person or to one who can bind an interested person as described in (2)(i) or (2)(ii) above. Notice may be given both to a person and to another who may bind the person.

(ii) Notice is given to unborn or unascertained persons, who are not represented under (2)(i) or (2)(ii) above, by giving notice to all known persons whose interests in the proceedings are substantially identical to those of the unborn or unascertained persons.

Appellants also claim that since they have averred fraud allegedly perpetrated by the Trustees, the relief sought in S.P. 88-0184 is permitted by HRS § 560:1-106 which provides in part as follows:

> **Effect of fraud and evasion.** Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under this chapter or if fraud is used to avoid or circumvent the provisions or purposes of this chapter, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person (other than a bona fide purchaser) benefitting from the fraud, whether innocent or not.

We disagree.

We need not determine here whether the fraud alleged in the S.P. 88-0184 petition falls within the ambit of HRS § 560:1-106. In our view, HRS § 560:1-106 does not condone the relitigation of issues merely because they sound in fraud. The above quoted portion of HRS § 560:1-106 is virtually identical to that of section 1-106 of the Uniform Probate Code, 8 U.L.A. 26 (1983). The commentary to section 1-106 states that an "action under this section is subject to usual rules of res judicata[.]" *Id.* We hold that HRS § 560:7-206 is applicable to an action under HRS § 560:1-106. Thus, if S.P. 88-0184 was an action under HRS § 560:1-106, Appellants were bound by the order in S.P. 85-0030, a prior HRS § 560:1-106 action.

Finally, citing *Filipino Fed'n of Am. v. Cubico,* 46 Haw. 353, 380 P.2d 488 (1963), Appellants argue that they were "necessary parties" in S.P. 85-0030, but were not named as parties. They therefore claim that the order dismissing S.P. 85-0030, with prejudice, pursuant to a stipulated settlement, was not binding on them. We disagree.

*Filipino Fed'n* was decided before the enactment of HRS Chapter 560 in 1976. HRS § 560:7-206 which explicitly binds interested persons, who have received notice of proceedings involving trusts, to decrees and orders issued in such proceedings, is controlling in this case. Moreover, that statute is not constitutionally infirm since it provides for "notice and opportunity for hearing[.]" *Klinger v. Kepano,* 64 Haw. 4, 10, 635 P.2d 938, 942 (1981) (citing *Mullane v.*

*Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). In S.P. 85-0030, Appellants received notice of the proceedings and had an opportunity to appear in the case and to be heard.

## IV. CONCLUSION

In the case at bar, the lower court properly granted the Trustees a summary judgment dismissing S.P. 88-0184. Although the court based its ruling on res judicata grounds and not on HRS § 560:7-206, our supreme court has repeatedly held that "where the trial court has reached a correct conclusion, its decision will not be disturbed on the ground that the reasons it gave for its action were erroneous." *Federal Elec. Corp. v. Fasi,* 56 Haw. 57, 64, 527 P.2d 1284, 1289-90 (1974). *Accord, Survivors of Medeiros v. Maui Land & Pineapple Co.,* 66 Haw. 290, 293, 660 P.2d 1316, 1319 (1983); *Strouss v. Simmons,* 66 Haw. 32, 40, 657 P.2d 1004, 1010-11 (1982); *Keawe v. Hawaiian Elec. Co.,* 65 Haw. 232, 237, 649 P.2d 1149, 1153 (1982); *McCarthy v. Yempuku,* 5 Haw. App. 45, 52, 678 P.2d 11, 16 (1984). Accordingly, we affirm the summary judgment of the lower court.

Affirmed.

*Mark N. Henry (Matthew N. Padgett* with him on the briefs; *Padgett & Henry,* of counsel) for petitioners-appellants Ellen M. Osborne, Peter D. Osborne and Ian M. Osborne.

*Stephen B. MacDonald (A. Singleton Cagle* with him on the briefs; *Cades Schutte Fleming & Wright,* of counsel) for respondents-appellees Sherman Nott Dowsett, Ernest K. Kai and Henry Klein.