**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000847
26-APR-2023
07:52 AM
Dkt. 53 MO**

NO. CAAP-17-0000847

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


ROSALINDA GANIR SAPLAN and RECTO RAMOS SAPLAN,
Plaintiffs-Appellants, v.
U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR BAFC 2007-A,
Defendant-Appellee, and DOES 1-10, Defendants.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC15-1-001465)


MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Leonard and McCullen, JJ.)

Plaintiffs-Appellants Rosalinda G. Saplan and Recto R.
Saplan (collectively **Saplans**) appeal from the Circuit Court of
the First Circuit's[1] October 23, 2017 order granting Defendant-
Appellee U.S. Bank National Association's (**U.S. Bank**) motion for

_____

[1] The Honorable Jeffrey P. Crabtree presided.

summary judgment[2] and the October 23, 2017 Judgment.  Based on the discussion below, we affirm in part and vacate in part.

## I.    Background

In 2006, the Saplans and their son, Ricky Saplan (**Ricky**) purchased a lot on Ho'olana Place in Kona (**the Property**) as tenants in common, each with an undivided 1/3 interest.  The Saplans and Ricky signed a promissory note for $475,200.00 with National City Bank secured by a mortgage for the Property and, at some point, defaulted on the note.  In 2009, National City Bank assigned the mortgage on the Property to U.S. Bank.  A short time later, Rosalinda wrote a letter to a negotiator at National City Bank stating she no longer occupied the Property.

U.S. Bank, in its capacity as Trustee, later gave a limited power of attorney to PNC Bank, National Association and PNC Mortgage (**PNC**), which was recorded in the Bureau of Conveyances on February 1, 2010.  On January 5, 2011, PNC's "Notice of Mortgagee's Intention to Foreclose under Power of Sale" was recorded in the Bureau of Conveyances.

On March 10, 2011, PNC conducted a non-judicial foreclosure sale where PNC bought the property for $288,000.00.

---

[2]  The October 23, 2017 order was entitled "Order Granting Defendant U.S. Bank National Association, as Trustee for BAFC 2007-A's Motion for Summary Judgment on Plaintiff Rosalinda Ganir Saplan and Recto Ramos Saplan's Verified Complaint, Filed July 27, 2015."

A "Mortgagee's Quitclaim Deed Pursuant to Power of Sale" was recorded in the Bureau of Conveyances on July 22, 2011, conveying the Property to U.S. Bank.

There is no evidence in the record on appeal that shows the Saplans challenged the foreclosure sale.

## A. 2011 Action - U.S. Bank's Complaint for Ejectment in Circuit Court

In 2011, U.S. Bank filed a complaint in the Circuit Court of the Third Circuit entitled "Complaint for Ejectment; Exhibits '1' and '2'; Foreclosure Mediation Notice; Foreclosure Mediation Request; Summons[.]"

The Saplans moved to dismiss the complaint, which the circuit court denied.

In its pretrial statement, U.S. Bank asserted that the "Mortgagee's Quitclaim Deed Pursuant to Power of Sale transferring title of said real property to [U.S Bank] was recorded in the Bureau of Conveyances" on July 22, 2011.  U.S. Bank also asserted that the Saplans, Luku Amone (**Luku**), and Rehna Amone (**Rehna**)[3] were "still remaining on the property as trespassers and/or uninvited guests and lessees."

On August 2, 2013, the circuit court entered an order dismissing the case as to all parties "pursuant to Rule 12(q) of

---

[3]  Rehna is referred to as "Rahina" by U.S. Bank and the court in the 2011 case.  In the 2015 case, she is referred to as "Rehna" by the Saplans and U.S. Bank.

3

the Rules of the Circuit Courts of the State of Hawaiʻi [(**RCCH**)] for failure to schedule a trial setting status conference" (**2013 Order**).[4]  The caption of the dismissal order named as defendants the Saplans, Riley Saplan (**Riley**), Rehna, Luku, and John and Mary Does 1-10.  The record does not show that the circuit court entered a final judgment, or that Ricky was a named party.

**B.    2014 Action – U.S. Bank's Complaint for Summary Possession and Ejectment in District Court**

About a year later, on April 24, 2014, U.S. Bank filed a "Verified Complaint for Summary Possession and Ejectment" in the District Court of the Third Circuit.  The complaint named as defendants the Saplans, Ricky, and John and Jane Does 1-50, and alleged that the Saplans, Ricky, and others remained on the property.  U.S. Bank asserted the following claims:

> **Count 1**    "Former Owners-Tenants at Sufferance" –
> U.S. Bank alleged that the former owners
> were "now occupying the Property under

---

[4]  Addressing dismissals for want of prosecution, RCCH Rule 12(q) provided:

> An action may be dismissed sua sponte with written notice to the parties if a pretrial statement has not been filed within 8 months after a complaint has been filed (or within any further period of extension granted by the court) or if a trial setting status conference has not been scheduled as required by Rule 12(c).  Such dismissal may be set aside and the action reinstated by order of the court for good cause shown upon motion duly filed not later than ten (10) days from the date of the order of dismissal.

RCCH Rule 12(q).

tenancy by sufferance pursuant to" Hawaii Revised Statutes (**HRS**) § 667-33 (2016);[5]

Count 2    "Tenants of Former Owner - Tenants at Sufferance" – U.S. Bank alleged that tenants of former owners rights to occupy were terminated and they were liable for payment for using the Property; and

Count 3    "Trespassers" – U.S. Bank alleged that trespassers never had right to occupy the Property and are liable for payment.

(Emphasis omitted.)

As it acknowledges in its answering brief, U.S. Bank dismissed the Saplans from the 2014 Action on May 20, 2014.

Three months later, the district court entered a judgment for possession stating U.S. Bank was entitled to the property and a writ of possession would be issued pursuant to HRS § 666-11 (Supp. 2013).[6]  Both the judgment and the writ had

---

[5]  HRS § 667-33 addresses the process after sale of a property subject to non-judicial foreclosure, and subsection (c) provides in relevant part:

> The mortgagor and any person claiming by, through, or under the mortgagor and who is remaining in possession of the mortgaged property after the recordation of the affidavit and the conveyance document shall be considered a tenant at sufferance subject to eviction or ejectment.  The purchaser may bring an action in the nature of summary possession under chapter 666, ejectment, or trespass or may bring any other appropriate action in a court where the mortgaged property is located to obtain a writ of possession, a writ of assistance, or any other relief. . . .

[6]  HRS § 666-11 provides:

> If it is proved to the satisfaction of the court that the plaintiff is entitled to the possession of the premises, the plaintiff shall have judgment for possession, and for the plaintiff's costs.  Execution shall issue accordingly.

(continued . . .)

the Saplans' names crossed out.  The writ of possession was served on Ricky and Latasha Ortiz (**Ortiz**) on November 5, 2014 and filed on November 20, 2014, concluding the case.

U.S. Bank conveyed the property to a third party by a special warranty deed recorded in the Bureau of Conveyances on March 30, 2015.

**C.    2015 Action – Saplans' Complaint in This Case
               in Circuit Court**

On July 27, 2015, the Saplans filed a Verified Complaint, claiming the following:

> **Count 1**    Quiet Title, alleging they were the true owners of the Property;
>
> **Count 2**    Ejectment, seeking a writ of ejectment against U.S. Bank pursuant to HRS § 603-36 (1993);
>
> **Count 3**    Trespass, alleging U.S. Bank "and/or its agents or assignees remain[ed] on the [P]roperty as trespassers";
>
> **Count 4**    Fraud on the Court, alleging that U.S. Bank "concealed from the Court when securing its writ of possession in the 2014 Case that identical claims had already been dismissed with prejudice in the 2011 Case";

---

(. . . continued)

> The writ of possession shall issue to the sheriff, deputy sheriff, police officer, or independent civil process server from the department of public safety's list under section 353C-10, commanding the sheriff, deputy sheriff, police officer, or independent civil process server to remove all persons from the premises, and to put the plaintiff, or the plaintiff's agent, into full possession thereof.

6

**Count 5**      Unjust Enrichment, asserting that they were entitled to monetary compensation if title could not be quieted due to transfer "to a bona fide purchaser" and;

**Count 6**      Punitive Damages, asserting that U.S. Bank was indifferent to their "finances, health, and well-being[.]"

U.S. Bank moved for summary judgment arguing that "(1) the Saplans' claims are barred by res judicata and the doctrines of estoppel, laches and mootness, and judicial estoppel; and (2) they cannot establish the necessary element of title to the Property."  (Emphasis omitted.)

The Saplans filed a memorandum in opposition contending U.S. Bank itself was precluded by res judicata, the 2011 Action adjudicated title in their favor, they did not unreasonably delay in filing the case, and U.S. Bank did not indicate "any inconsistent position taken by" them.

Following a hearing, the circuit court granted U.S. Bank's motion for summary judgment and entered the Judgment in favor of U.S. Bank.

## II.  Standard of Review

We review the grant or denial of summary judgment *de novo*.  <u>Nuuanu Valley Ass'n v. City & Cnty. of Honolulu</u>, 119 Hawai'i 90, 96, 194 P.3d 531, 537 (2008).

## III.  Discussion

In their sole point of error on appeal, the Saplans contend that the circuit court erred in granting U.S. Bank's motion for summary judgment.

The movant for summary judgment bears the initial burden of establishing entitlement to summary judgment.  See Ralston v. Yim, 129 Hawaiʻi 46, 59-61, 292 P.3d 1276, 1289-91 (2013).  A defendant moving for summary judgment "may satisfy his or her initial burden of production by either (1) presenting evidence negating an element of the [nonmovant's] claim, or (2) demonstrating that the nonmovant will be unable to carry his or her burden of proof at trial."  129 Hawaiʻi at 60, 292 P.3d at 1290.  In other words, the movant's "burden may be discharged by demonstrating that if the case went to trial, there would be no competent evidence to support a judgment for his or her opponent."  Kondaur Cap. Corp. v. Matsuyoshi, 136 Hawaiʻi 227, 240, 361 P.3d 454, 467 (2015) (cleaned up).

"Only with the satisfaction of this initial showing does the burden shift to the [non-moving] party to respond by affidavits or as otherwise provided in [Hawaiʻi Rules of Civil Procedure (**HRCP**)] Rule 56, setting forth specific facts showing that there is a genuine issue for trial."  136 Hawaiʻi at 240-41, 361 P.3d at 467-68 (cleaned up).

8

Evidence will be examined in the light most favorable to the non-moving party. See Nuuanu Valley Ass'n, 119 Hawaiʻi at 96, 194 P.3d at 537. "[S]ummary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." Goran Pleho, LLC v. Lacy, 144 Hawaiʻi 224, 236, 439 P.3d 176, 188 (2019) (citation omitted).

## A. The Circuit Court Did Not Err In Granting Summary Judgment On Count 4

Starting with Count 4 (Fraud on the Court) of the complaint, the Saplans would have been required to establish by "clear and convincing evidence" that U.S. Bank "acted with the intent to defraud" the court, and the court was actually "deceived by the fraud." See Schefke v. Reliable Collection Agency, Ltd., 96 Hawaiʻi 408, 431, 32 P.3d 52, 75 (2001); 47 Am. Jur. 2d Judgments § 665 (2023); see also 47 Am. Jur. 2d Judgments § 691 (2023) ("nondisclosures which are not part of a deliberate scheme of misrepresentations fall short of the standard needed to set aside a judgment for fraud upon the court"). Under Hawaiʻi case law, to rise to the level of fraud on the court, the purported fraud "must be a direct assault on the integrity of the judicial process," which requires "more than nondisclosure by a party or the party's attorney to find

9

fraud on the court." Schefke, 96 Hawaiʻi at 431, 32 P.3d at 75 (citation and internal quotation marks omitted).

In its motion for summary judgment, U.S. Bank argued that "there [was] nothing to indicate that the outcome of the 2011 Action was purposefully hidden from the Court. The 2011 Action is a matter of public record and nothing suggests that [it] was required to disclose the prior action." U.S. Bank additionally points out that the "Saplans knew about the 2011 Action yet failed to raise it."

To support its contention that the 2011 Action was a matter of public record, U.S. Bank attached various documents from the 2011 Action, including the Case Information sheet from "http://hoohiki.courts.hawaii.gov" and three documents file stamped by the clerk of the third circuit court - the order denying the Saplans' motion to dismiss, U.S. Bank's pretrial statement, and the order of dismissal.

As the burden then shifted to the Saplans, they asserted that U.S. Bank "was absolutely precluded from filing its second action in 2014, which was nothing short of a fraudulent effort to remove Plaintiffs from their property, . . . amounting to an adjudication on the merits in favor of Plaintiffs herein." The Saplans provided no affidavits or evidence to support their assertion.

10

The party asserting claim preclusion must prove that "(1) there was a final judgment on the merits, (2) both parties are the same or in privity with the parties in the original suit, and (3) the claim decided in the original suit is identical with the one presented in the action in question." Bremer v. Weeks, 104 Hawai'i 43, 54, 85 P.3d 150, 161 (2004).

In both the 2011 Action and the 2014 Action, U.S. Bank asserted "ejectment." And, although there was no final judgment, the dismissal of the 2011 Action was an adjudication on the merits in favor of the Saplans and against U.S. Bank. RCCH Rule 12(q) (providing in part that "[a]n action may be dismissed sua sponte with written notice to the parties . . . if a trial setting status conference has not been scheduled as required by Rule 12(c)"); Ryan v. Palmer, 130 Hawai'i 321, 322, 310 P.3d 1022, 1023 (App. 2013) (amended on reconsideration in part by Ryan v. Palmer, 130 Hawai'i 301, 309 P.3d 969, No. CAAP-12-0000697 (App. Sept. 12, 2013)) (explaining that because the circuit court's order of dismissal based on RCCH 12(q) "did not specify otherwise, the circuit court's dismissal was with prejudice[,]" citing HRCP Rule 41(b)(3)) (providing that "[u]nless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule . . . operates as an adjudication upon the merits").

11

But, as the party asserting preclusion, the Saplans failed to show that the parties in the 2014 Action were the same as the parties in the 2011 Action. After the Saplans were dismissed from the 2014 Action, the Judgment of Possession and Writ of Judgment affected only Ricky and Ortiz, neither of whom were parties to the 2011 Action.

In short, U.S. Bank's 2014 Action against Ricky and Ortiz, when considered in light of its 2011 Action against the Saplans, did not amount to fraud on the court. Thus, we cannot say that the circuit court erred in granting U.S. Bank's motion for summary judgment on Count 4. Ralston, 129 Hawai'i at 60, 292 P.3d at 1290 ("For if no evidence could be mustered to sustain the [non-moving] party's position, a trial would be useless").

B.  **The Circuit Court Erred In Granting Summary Judgment On The Remaining Counts**

1.  **U.S. Bank failed to establish that the Saplans were precluded from asserting Counts 1-3**

On appeal, the Saplans argue that they were not precluded from filing the 2015 action as they were not parties to the 2014 Action and were not in privity with Ricky and Ortiz. To the contrary, U.S. Bank proffers that all three requirements of claim preclusion were satisfied.

As the party asserting preclusion, U.S. Bank bore the burden of establishing that there was a final judgment on the merits, the parties are the same or in privity with those from

12

the original action, and the claims are identical.  <u>Bremer</u>, 104 Hawai'i at 54, 85 P.3d at 161.

Here, both the 2014 Action and this case involved an ejectment claim.  But, although there was a final judgment in the 2014 Action, there was no final judgment against the Saplans.  In other words, U.S. Bank failed to establish that the parties in both actions were the same.  U.S. Bank dismissed the Saplans from the 2014 Action and proceeded only against Ricky and Ortiz.  Thus, the parties were not the same in both cases.

U.S. Bank then argues that the Saplans were in privity with Ricky "because as co-owners and co-mortgagors of the Property, their rights, duties, and obligations under the Mortgage were identical."  The concept of privity has evolved from the "narrowly defined meaning of 'mutual or successive relationship[s] to the same rights of property' to 'merely a word used to say that the relationship between the one who is a party of record and another is close enough to include that other within the res adjudicata.'"  <u>In re Herbert M. Dowsett Tr.</u>, 7 Haw. App. 640, 646, 791 P.2d 398, 402 (1990) (citation omitted).  This concept of privity follows modern case law, which recognizes the determination of sufficient privity requires "careful examination into the circumstances in each case as it arises."  <u>Id.</u>

As "res judicata is an affirmative defense under HRCP Rule 8(c), the party asserting [it] has the burden of proving adequate representation of the interests and proper protection of the rights of the nonparty in the prior action."  7 Haw. App. at 646, 791 P.2d at 402-03.  "Adequate representation of the interests of the nonparty," as well as "proper protection to the rights of the person sought to be bound are major considerations in privity analysis."  7 Haw. App. at 646, 791 P.2d at 402 (citations and internal quotation marks omitted).  Further, the existence of privity "depend[s] upon a finding that the first action provided substantial protection of the rights and interests of the [nonparty]."  Id.

Generally, there is no privity between joint tenants or tenants in common because they do not claim through or under each other, thus judgment for or against one regarding the land will not bind the others.  Hewahewa v. Lalakea, 27 Haw. 544, 571 (Haw. Terr. 1923) (explaining that "there is no privity of estate between tenants in common"); 50 C.J.S. Judgments § 1112 (2023) ("Joint tenants or tenants in common do not claim through or under each other, and therefore there is no such privity between them that a judgment for or against one of them affecting the land will bind the other").

14

Viewing the evidence in the light most favorable to the Saplans, U.S. Bank failed to meet its burden of establishing that the parties bound by the judgment in the 2014 Action (Ricky and Ortiz) were the same or in privity with the parties in this case (the Saplans).

### 2. U.S. Bank failed to establish that the Saplans' claims were precluded under the doctrine of laches

The Saplans argue their claims are not precluded under the doctrine of laches because they filed "this lawsuit within months of U.S. Bank's wrongful sale of their home to a third party, and within less than one year after U.S. Bank wrongfully obtained a judgment in" the 2014 case.

"[L]aches is a defense in all civil actions." Ass'n of Apartment Owners of Royal Aloha v. Certified Mgmt., Inc., 139 Hawaiʻi 229, 235, 386 P.3d 866, 872 (2016).

> There are two components to laches, both of which must exist before the doctrine will apply. First, there must have been a delay by the plaintiff in bringing his claim, and that delay must have been unreasonable under the circumstances. Delay is reasonable if the claim was brought without undue delay after plaintiff knew of the wrong or knew of facts and circumstances sufficient to impute such knowledge to him. Second, that delay must have resulted in prejudice to defendant. Common but by no means exclusive examples of such prejudice are loss of evidence with which to contest plaintiff's claims, including the fading memories or deaths or material witnesses, changes in the value of the subject matter, changes in defendant's position, and intervening rights of third parties.

139 Hawaiʻi at 234, 386 P.3d at 871. Additionally, "[l]apse of time alone does not constitute laches. Since laches is an equitable defense, its application is controlled by equitable

15

considerations." Pelosi v. Wailea Ranch Ests., 91 Hawaiʻi 478, 491, 985 P.2d 1045, 1058 (1999) (citation omitted) (holding delay of four months from learning of definitive plans not unreasonable).

"[A] suit by a tenant in common to recover his or her share of the common property from a third person is not barred by laches, if it is brought within a reasonable time after the tenant ascertains that the third person is claiming the whole common property."  86 C.J.S. Tenancy in Common § 166 (2023).

As the movant for summary judgment, it was U.S. Bank's burden to prove the delay was unreasonable.  See generally, Ralston, 129 Hawaiʻi at 59-61, 292 P.3d at 1289-91.  Based on the attachments to its motion for summary judgment, U.S. Bank held title to the property for several months before the Saplans challenged the ejectment during the 2011 Action, and that action was dismissed in 2013 for U.S. Bank's failure to prosecute. Later, U.S. Bank voluntarily dismissed the Saplans from the 2014 Action.  About 14 months after being dismissed from the 2014 case, the Saplans instituted the current case and took an active role in it.

In sum, the Saplans defended themselves in the 2011 Action, an action U.S. Bank failed to prosecute, and filed the 2015 Complaint about fourteen months after U.S. Bank dismissed them from the 2014 Action.  Viewing this evidence in the light

16

most favorable to the Saplans, we cannot say that U.S. Bank met its burden of establishing that the Saplans' delay in filing the complaint was unreasonable.

### 3. U.S. Bank failed to establish that there was no genuine issue of material fact

The Saplans argue that "because title to the subject real property was at issue in the 2011 lawsuit, which was adjudicated in [their] favor as the result of the court's dismissal, [they] maintain a superior claim to title."

U.S. Bank, on the other hand, argues that "[t]he 2011 Action did not determine title to the Property." (Formatting altered.)  Quoting from Kondaur, U.S. Bank explains that "[i]n order to prevail in an ejectment action, a plaintiff 'must necessarily prove that he or she owns the parcel in issue.'" 136 Hawaiʻi at 241, 361 P.3d at 468 (citation omitted).  U.S. Bank then asserts that the Saplans' "claims fail as a matter of law because they cannot establish title to the Property[,]" and that "[a]s a result of the March 10, 2011 foreclosure sale, [the Saplans] were no longer the owners of the Property."  (Some formatting altered.)

Counts 1 (Quiet Title), 2 (Ejectment), and 3 (Trespass) of the Saplans' complaint requires the Saplans to prove they are the rightful owners of the Property.  See Ibbetson v. Kaiawe, 143 Hawaiʻi 1, 17, 422 P.3d 1, 17 (2018)

17

(articulating plaintiff in quiet title action has burden of proving they have "paper title to the property" or hold "title by adverse possession") (citation omitted); Kondaur Cap. Corp., 136 Hawai'i at 241, 361 P.3d at 468 (stating plaintiff must prove they own "the parcel in issue" in ejectment action) (citation and brackets omitted); Mew Kung Tung v. Wong Ka Mau, 8 Haw. 557, 559 (Haw. Prov. Gov. 1893) (noting if title is in issue in trespass action, plaintiff bears burden to prove title).

As the defendant moving for summary judgment, U.S. Bank "may satisfy [its] initial burden of production by either (1) presenting evidence negating an element of the [nonmovant's] claim, or (2) demonstrating that the nonmovant will be unable to carry his or her burden of proof at trial." Ralston, 129 Hawai'i at 60, 292 P.3d at 1290 (citations omitted). In other words, the movant's "burden may be discharged by demonstrating that if the case went to trial, there would be no competent evidence to support a judgment for his or her opponent." Kondaur Cap. Corp., 136 Hawai'i at 240, 361 P.3d at 467 (cleaned up).

Here, U.S. Bank presented the circuit court with a "Mortgagee's Quitclaim Deed Pursuant to Power of Sale" recorded in the Bureau of Conveyances on July 22, 2011, conveying the Property to U.S. Bank. However, a "quitclaim deed carries with it all of the infirmities that the prior non-judicial

foreclosure might have occasioned upon the deed." 136 Hawaiʻi at 241, 361 P.3d at 468. A Mortgagee's "self-dealing of the Property trigger[s] its burden to prove in the summary judgment proceeding that the foreclosure 'sale was regularly and fairly conducted in every particular.'" Id. (citation omitted). Such "a self-dealing mortgagee . . . was required under Ulrich to introduce evidence that [it] exercised its right to non-judicial foreclosure under a power of sale in a manner that was fair, reasonably diligent, and in good faith, and to demonstrate that an adequate price was procured for the Property." 136 Hawaiʻi at 242, 361 P.3d at 469.

In moving for summary judgment, U.S. Bank also provided the circuit court with the Declaration of Sarah T. Greggerson (**Greggerson**) of PNC, the loan servicing agent for U.S. Bank, who attested that the subject property was sold at public auction to U.S. Bank on March 10, 2011, and provided a certified copy of the "Mortgagee's Quitclaim Deed Pursuant to Power of Sale," recorded in the Bureau of Conveyances on July 22, 2011, showing U.S. Bank had held title to the Property. Greggerson further attested that the property was sold to a third party on March 30, 2015.

Although Greggerson attested that "[t]he Property was sold at public auction on March 10, 2011 to U.S. Bank, the highest bidder[,]" her declaration "fails to provide any

19

averments as to the fairness and regularity of the foreclosure sale or as to whether [U.S. Bank] conducted the foreclosure sale in a diligent and reasonable manner." Kondaur Cap. Corp., 136 Hawaiʻi at 242, 361 P.3d at 469. Also, U.S. Bank's pre-trial statement in the 2011 action states the Property was sold for $288,000 at the foreclosure sale, but U.S. Bank "does not make any declaration concerning the adequacy of this price." 136 Hawaiʻi at 243, 361 P.3d at 470.

Thus, viewing the evidence presented in the light most favorable to the Saplans, U.S. Bank failed to meet its burden at summary judgment to show there was no genuine issue as to title of the Property. By failing to establish as such, the burden never shifted to the Saplans.

The circuit court thus erred in granting U.S. Bank's motion for summary judgment on Counts 1-3. To the extent the damages sought in Counts 5 (Unjust Enrichment/Actual Damages) and 6 (Punitive Damages) are related to Counts 1-3, the circuit court erred in granting summary judgment on those counts as well.

**IV. Conclusion**

For the above reasons, we affirm in part and vacate in part the circuit court's October 23, 2017 order granting summary

judgment and October 23, 2017 Judgment, and remand this case for further proceedings consistent with this opinion.

DATED:  Honolulu, Hawaiʻi, April 26, 2023.

On the briefs:                          /s/ Lisa M. Ginoza
                                        Chief Judge

Frederick J. Arensmeyer,
for Plaintiffs-Appellants.              /s/ Katherine G. Leonard
                                        Associate Judge

Jade Lynne Ching and
Ryan B. Kasten,                         /s/ Sonja M.P. McCullen
for Defendant-Appellee.                 Associate Judge